


Aileen M. Hunter
Attorney at Law
Direct: (949) 223-7138
aileen.hunter@bryancave.com

July 14, 2014

**BY HAND**

Circuit Clerk
U.S. Court of Appeals, Ninth Circuit
95 Seventh Street
San Francisco, CA 94103-1526

Re: *Matt Bartell, et al. v. JPMorgan Chase Bank, National Association; et al.*
Appeal No. 13-56027

## NOTICE OF SUPPLEMENTAL AUTHORITY

Dear Circuit Clerk:

Pursuant to Federal Rule of Appellate Procedure 28(j) and Circuit Rule 28-6, Appellee JPMorgan Chase Bank, N.A. ("Chase") provides notice of supplemental authority.

We submit, for the Court's consideration, the recent published decision in *Rajamin v. Deutsche Bank Nat. Trust Co.*, No. 13-1614, ___ F.3d ___, 2014 WL 2922317 (June 30, 2014). (*See* pp. 15-24 of Chase's Answering Brief). The decision by the U.S. Court of Appeals for the Second Circuit was decided after submission of the parties' briefs in this appeal.

Thank you.

Sincerely,

Aileen M. Hunter

AMH:APB:tm
Enclosures

cc: Joseph C. La Costa, Attorney for Appellants Matt & Jodi Bartell

Bryan Cave LLP
3161 Michelson Drive
Suite 1500
Irvine, CA 92612-4414
Tel (949) 223-7000
Fax (949) 223-7100
www.bryancave.com

Bryan Cave Offices
Atlanta
Boulder
Charlotte
Chicago
Colorado Springs
Dallas
Denver
Frankfurt
Hamburg
Hong Kong
Irvine
Jefferson City
Kansas City
London
Los Angeles
New York
Paris
Phoenix
San Francisco
Shanghai
Singapore
St. Louis
Washington, DC

Bryan Cave
International Consulting
A TRADE AND CUSTOMS CONSULTANCY
www.bryancaveconsulting.com
Bangkok
Beijing
Jakarta
Kuala Lumpur
Manila
Shanghai
Singapore
Tokyo

IR01DOCS\716075.1

Westlaw.

--- F.3d ----, 2014 WL 2922317 (C.A.2 (N.Y.))
**(Cite as: 2014 WL 2922317 (C.A.2 (N.Y.)))**

H
Only the Westlaw citation is currently available.

United States Court of Appeals,
Second Circuit.
David RAJAMIN, Edith Gonzalez Larios, Jesus Valdez, Maurice Nunez, Elias Estrada, Irma Estrada, Theresa Doty, Robert Basel, Larry Myron Kegel, on behalf of themselves and a class of similarly situated individuals, Plaintiffs–Appellants,
v.
DEUTSCHE BANK NATIONAL TRUST COMPANY, a national banking association, individually and as Trustee of FFMLT Trust 2005–FF8; FFMLT Trust 2006–FF3; FFML Trust 2006–FF11; and FFMLT Trust 2006–FF13, New York common law trusts, Defendants–Appellees.[FN*]

Docket No. 13–1614.
Argued: Nov. 20, 2013.
Decided: June 30, 2014.

**Background:** Mortgagors filed action seeking declaratory judgment that mortgagee's assignees did not own their loans and mortgages due to their failure to comply with assignment agreements. The United States District Court for the Southern District of New York, Laura Taylor Swain, J., 2013 WL 1285160, dismissed complaint, and mortgagors appealed.

**Holdings:** The Court of Appeals, Kearse, Circuit Judge, held that:
(1) mortgagors lacked Article III standing to bring action;
(2) mortgagors lacked prudential standing to bring action; and
(3) assignments were not void as matter of trust law.

Affirmed.

West Headnotes

**[1] Federal Civil Procedure 170A ⇌0**

170A Federal Civil Procedure

Plaintiff bears burden of establishing standing.

**[2] Federal Courts 170B ⇌0**

170B Federal Courts

Court of Appeals reviews de novo decision as to plaintiff's standing to sue based on allegations of complaint and undisputed facts evidenced in record.

**[3] Federal Civil Procedure 170A ⇌0**

170A Federal Civil Procedure

Irreducible constitutional minimum of standing under Article III includes requirement that plaintiff must have suffered an injury in fact that is (1) concrete and particularized, and (2) actual or imminent, not conjectural or hypothetical. U.S.C.A. Const.Amend. 3, § 2, cl. 1.

**[4] Mortgages 266 ⇌0**

266 Mortgages

Mortgagors did not suffer any injury as result of mortgage lender's assignment of their promissory notes and mortgages to securitization trusts, and thus lacked Article III standing to bring action seeking declaratory judgment that trusts did not own their loans and mortgages due to their failure to comply

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2014 WL 2922317 (C.A.2 (N.Y.))
(Cite as: 2014 WL 2922317 (C.A.2 (N.Y.)))

with assignment agreements, even though trusts had commenced foreclosure proceedings against them, where mortgagors did not pay more than amounts due, and no other entity had demanded payments or threatened or instituted foreclosure proceedings against them. U.S.C.A. Const.Amend. 3, § 2, cl. 1.

[5] Mortgages 266 €==0

266 Mortgages

Mortgagors were not intended third-party beneficiaries of mortgage lender's pooling service agreements (PSA) governing securitization trusts in which mortgagors' loans were held, and thus lacked prudential standing to bring action seeking declaratory judgment that trusts did not own their loans and mortgages due to their failure to comply with PSAs, where mortgagors were not parties to PSAs, and PSAs did not confer any rights on mortgagors.

[6] Contracts 95 €==0

95 Contracts

Under New York law, contract's terms may be enforced only by contracting parties or contract's intended third-party beneficiaries.

[7] Trusts 390 €==0

390 Trusts

Under New York law, only private trust's intended beneficiary may enforce its terms.

[8] Trusts 390 €==0

390 Trusts

Under New York law, purported failure of securitization trusts created by mortgage lender's pooling service agreements (PSA) to comply with PSAs' terms did not render trusts' acquisition of loans and mortgages void as matter of trust law, but instead only rendered acquisitions voidable by trusts' beneficiaries. McKinney's EPTL 7–2.4.

[9] Trusts 390 €==0

390 Trusts

Under New York law, unauthorized acts by trustees are generally subject to ratification by trust beneficiaries.

[10] Mortgages 266 €==0

266 Mortgages

Under California and New York law, when note secured by mortgage is assigned, mortgage passes with debt as inseparable incident.

[11] Mortgages 266 €==0

266 Mortgages

Under California and New York law, assignment of mortgage need not be recorded for assignment to be valid.

Appeal from a judgment of the United States District Court for the Southern District of New York, Laura Taylor Swain, *Judge,* dismissing, for lack of standing, and hence failure to state a claim, plaintiffs-mortgagors' complaint alleging that mortgagees' assignments of the loans and mortgages to defendant trusts were ineffective because the assignors failed to perform certain obligations under assignment agreements to which plaintiffs were not parties. *See* 2013 WL 1285160 (Mar. 28, 2013). Affirmed.James B.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2014 WL 2922317 (C.A.2 (N.Y.))
(Cite as: 2014 WL 2922317 (C.A.2 (N.Y.)))

Sheinbaum, New York, N.Y. (Borstein & Sheinbaum, New York, NY; Lawrence H. Nagler, Nagler & Associates, Los Angeles, CA; Law Office of Henry Bushkin, Los Angeles, CA, on the brief), for Plaintiffs–Appellants.

Bernard J. Garbutt III, New York, N.Y. (Michael S. Kraut, Morgan, Lewis & Bockius, New York, NY, on the brief), for Defendants–Appellees.

Before KEARSE, JACOBS, and B.D. PARKER, Circuit Judges.

KEARSE, Circuit Judge:

*1 Plaintiffs David Rajamin *et al.,* who mortgaged their homes in 2005 or 2006, appeal from a judgment of the United States District Court for the Southern District of New York, Laura Taylor Swain, *Judge,* dismissing their claims against four trusts (the "Defendant Trusts") to which their loans and mortgages were assigned in transactions involving the mortgagee bank, and against those trusts' trustee, defendant Deutsche Bank National Trust Company ("Deutsche Bank" or the "Trustee"). Plaintiffs sought, on behalf of themselves and others similarly situated (the alleged "Class Members"), monetary and equitable relief and a judgment declaring that defendants do not own plaintiffs' loans and mortgages, on the ground, *inter alia,* that parties to the assignment agreements failed to comply with certain terms of those agreements. No class action was certified. The district court, finding that plaintiffs were neither parties to nor third-party beneficiaries of the assignment agreements, and hence lacked standing to pursue these claims, granted defendants' motion to dismiss the complaint for failure to state a claim. On appeal, plaintiffs contend that they plausibly asserted standing and asserted plausible claims for relief. For the reasons that follow, we conclude that the facts alleged by plaintiffs do not give them standing to pursue the claims they asserted, and we affirm the judgment of dismissal.

I. BACKGROUND

We accept the factual allegations in plaintiffs' Third Amended Complaint (or "Complaint")—which incorporated certain factual assertions, declarations, and attached exhibits submitted by defendants at earlier stages of this action—as true for purposes of reviewing the district court's dismissal for failure to state a claim on which relief can be granted, *see, e.g., Rothstein v. UBS AG,* 708 F.3d 82, 90 (2d Cir.2013), or for lack of standing, to the extent that the dismissal was based on the pleadings, *see, e.g., id.; Rent Stabilization Ass'n v. Dinkins,* 5 F.3d 591, 594 (2d Cir.1993). The principal factual allegations were as follows.

A. *The Third Amended Complaint*

Plaintiffs are five individuals and two married couples who had homes in California and who, in 2005 or 2006, borrowed sums ranging from $240,000 to $1,008,000, totaling $3,776,000, from a bank called First Franklin, a division of National City Bank of Indiana ("First Franklin"). Each plaintiff executed a promissory note secured by a deed of trust on the home—"equivalent to a mortgage" under California law, *Monterey S.P. Partnership v. W.L. Bangham, Inc.,* 49 Cal.3d 454, 461, 261 Cal.Rptr. 587, 777 P.2d 623, 627 (1989)—in favor of First Franklin.

The notes signed by plaintiffs stated that plaintiffs "promise[d] to pay [the stated amounts of principal, plus interest] *to the order of*" First Franklin (Third Amended Complaint ¶ 25 (emphasis added)). *See generally* U.C.C. §§ 3–104, 3–109 (2002) (a note "payable to order" is a type of negotiable instrument). The deeds of trust signed by plaintiffs, samples of which were attached to the Complaint, provided in part, in sections titled "UNIFORM COVENANTS," that the parties agreed that

*2 [t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold

--- F.3d ----, 2014 WL 2922317 (C.A.2 (N.Y.))
**(Cite as: 2014 WL 2922317 (C.A.2 (N.Y.)))**

one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument....

(Third Amended Complaint Exhibit E ¶ 20; *id.* Exhibit G ¶ 20.)

Deutsche Bank is the trustee of the four Defendant Trusts, which were created under the laws of New York. (*See* Third Amended Complaint ¶¶ 12, 13.) The Defendant Trusts—whose names begin with "First Franklin Mortgage Loan Trust" or the initials "FFMLT"—maintain that they were created in connection with securitization transactions involving mortgage loans originated by First Franklin between January 1, 2004, and January 1, 2007. (*See id.* ¶ 11, 261 Cal.Rptr. 587, 777 P.2d 623.) *See generally BlackRock Financial Management Inc. v. Segregated Account of Ambac Assurance Corp.,* 673 F.3d 169, 173 (2d Cir.2012) (Residential mortgage loans, rather than being retained by the original mortgagee, may be pooled and sold "into trusts created to receive the stream of interest and principal payments from the mortgage borrowers. The right to receive trust income is parceled into certificates and sold to investors, called certificateholders. The trustee hires a mortgage servicer to administer the mortgages by enforcing the mortgage terms and administering the payments. The terms of the securitization trusts as well as the rights, duties, and obligations of the trustee, seller, and servicer are set forth in a Pooling and Servicing Agreement....")

The Complaint alleged that defendants claim to have purchased plaintiffs' loans and mortgages, through intermediaries, from First Franklin (*see* Third Amended Complaint ¶ 28) and to have "the right to collect and receive payment on [plaintiffs'] loans ... pursuant to written agreements" (*id.* ¶¶ 30–31). Each securitization transaction involved written agreements (the "assignment agreements"), one of which was called a Pooling and Servicing Agreement ("PSA"). The PSAs, which by their terms are to be governed by New York law (*see id.* ¶ 29), "provided, inter alia, for the formation of the relevant Trust, the conveyance of a pool of mortgages to [Deutsche Bank],[ ]as trustee, the issuance of mortgage-backed securities representing interests in the pooled loans, and the servicing of the pooled loans by a loan servicer" (*id.* ¶ 28 (internal quotation marks omitted)). Defendants claim that in each such transaction, First Franklin sold a pool of mortgage loans "to a sponsor ... which, at closing, sold the loans through its affiliate, a depositor ..., to a trust." (*Id.* ¶ 63 (internal quotation marks omitted).) Thus, the intention of the parties to the sales and securitization transactions was that Deutsche Bank would become, "as Trustee, ... the legal owner and holder of [the] Notes and [deeds of trust]" originated by First Franklin (*id.* ¶ 28 (internal quotation marks omitted)).

1. *Plaintiffs' Challenges to the Assignments*

*3 The Complaint challenged defendants' (a) ownership of plaintiffs' loans and mortgages, (b) right to collect and receive payment on the loans, and (c) right to commence or authorize the commencement of foreclosure proceedings where payments have not been made or received (*see, e.g.,* Third Amended Complaint ¶¶ 32, 80, 120, 122, 123, 126), on the ground, *inter alia,* that there was a lack of compliance with provisions of the assignment agreements. First, the Complaint alleged that the assignments were defective because plaintiffs' mortgage loans were "not specifically list[ed]" in mortgage loan schedules or other attachments to the assignment agreements. (*Id.* ¶¶ 36, 52; *see also id.* ¶ 66.) Indeed, according to the Complaint, the assignment agreements did "not specifically list *any* promissory note, mortgage or deed of trust" that was allegedly sold, transferred, assigned, or conveyed to defendants. (*Id.* ¶ ¶ 37, 53 (emphasis added); *see also id.* ¶¶ 54, 59, 65.)

The Complaint also alleged that assignments by First Franklin to Deutsche Bank of four of plaintiffs'

--- F.3d ----, 2014 WL 2922317 (C.A.2 (N.Y.))
(Cite as: 2014 WL 2922317 (C.A.2 (N.Y.)))

deeds of trust were executed and publicly recorded in 2009 or 2010, after First Franklin had ceased operations and years after the securitization transactions took place. (*See id.* ¶¶ 74–79.) Plaintiffs argue that the execution and recordation of these mortgage assignments after the securitization transactions that created the Defendant Trusts indicate that these mortgages were not included in the mortgage loan pools that were sold to those trusts.

In addition, the Complaint alleged that two PSA provisions as to documents that were to accompany the conveyance of loans and mortgages to the trusts were not complied with at the time of the securitization transactions. These were (a) a provision stating that an affiliate of the sponsor "has delivered or caused to be delivered to" a named custodian "the original Mortgage Note bearing all intervening endorsements necessary to show a complete chain of endorsements from the original payee" (Third Amended Complaint ¶ 38 (internal quotation marks omitted); *see id.* ¶¶ 40–42), and (b) a similar provision as to delivery of "the originals of all intervening assignments of Mortgage with evidence of recording thereon evidencing a complete chain of ownership from the originator of the Mortgage Loan to the last assignee" (*id.* ¶ 43 (internal quotation marks omitted); *see id.* ¶¶ 46–48; *see also id.* ¶¶ 69–73).

2. *Alleged Injury to Plaintiffs*

The Complaint implied that plaintiffs made their loan payments to Deutsche Bank and the Defendant Trusts. It alleged that "Defendants claim[ed] and assert[ed] that payments [we]re due to them monthly" (Third Amended Complaint ¶ 119), and that defendants "received and collected money from payments made by Lead Plaintiffs and Class Members" (*id.* ¶ 95; *see also id.* ¶¶ 104, 115) "based upon Defendants' claims of rights, title and interest in the loans in issue in this Action" (*id.* ¶ 115; *see also id.* ¶ 81 ("The proposed class is all persons who took loans originated by First Franklin in 2004, 2005 and 2006 and for which Deutsche [Bank] claims to act as the trustee and for which Defendant Trusts have received or collected payments since January 1, 2004.")). The Complaint also alleged that "Defendants have commenced or authorized the commencement of foreclosure proceedings where payments have not been made or received" (*id.* ¶ 123), and that "[i]ndividuals and families have lost their homes and real property in foreclosure proceedings based upon the loans (including promissory notes, deeds of trust and mortgages) in issue in this Action" (*id.* ¶ 124).

*4 The Complaint alleged that—and sought a declaratory judgment that—as a result of the alleged failures with regard to the assignment agreements, "Deutsche [Bank] and Defendant Trusts have not obtained ownership over and do not own [plaintiffs'] [ ]promissory notes and deeds of trust" (Third Amended Complaint ¶ 80) and have no "right to collect and receive payment on the [mortgage] loans" (*id.* ¶ 32) and no "right to foreclose on [plaintiffs'] real property ... in the event that payments are not made" (*id.* ¶ 120).

While alleging that defendants received and collected money from plaintiffs that defendants "were not entitled to receive and collect" (Third Amended Complaint ¶ 95) and seeking as restitution and as damages "all payments on the mortgage loans in issue money [*sic* ] collected and received by Deutsche [Bank] and Defendant Trusts and their servicers, agents, employees and representatives" (*id.* WHEREFORE ¶¶ (a) and (b); *see also id.* ¶¶ 95–112), the Complaint did not allege or imply that any plaintiff or putative Class Member made loan payments in excess of amounts due, made loan payments to any entity other than defendants, or was subjected to duplicate billing or duplicate foreclosure actions.

B. *The Dismissal of the Complaint*

Defendants moved to dismiss the Third Amended Complaint on the ground, *inter alia,* that plaintiffs lacked standing to pursue claims based on alleged violations of agreements to which plaintiffs are not parties. In an opinion filed on March 28, 2013, the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2014 WL 2922317 (C.A.2 (N.Y.))
(Cite as: 2014 WL 2922317 (C.A.2 (N.Y.)))

district court granted the motion to dismiss the Complaint for failure to state a claim on which relief can be granted, finding that plaintiffs lacked standing to challenge defendants' ownership of the notes and mortgages based on alleged noncompliance with the terms of the PSAs. *See Rajamin v. Deutsche Bank National Trust Co.,* No. 10 Civ. 7531, 2013 WL 1285160, at *3–*4 (S.D.N.Y. Mar. 28, 2013). The court pointed out that

> Plaintiffs do not claim to have been parties to the PSAs, and none of the PSAs includes provisions indicative of party status for borrowers or mortgagors. The weight of caselaw throughout the country holds that a non-party to a PSA lacks standing to assert noncompliance with the PSA as a claim or defense unless the non-party is an intended (not merely incidental) third party beneficiary of the PSA.

*Id.* at *3. The court stated that "[t]he intent to render a non-party a third-party beneficiary must be clear from the face of the PSA," and that

> Plaintiffs have not alleged any facts that would support plausibly a claim that they are intended third-party beneficiaries of the PSAs. Thus, Plaintiffs lack standing to challenge Defendants' alleged ownership of the Notes and [deeds of trust] or authority to foreclose based on non-compliance with the PSAs.

*Id.*

In addition, the district court noted the Complaint's allegation that mortgage loan schedules accompanying the assignment agreements did not reflect plaintiffs' loans. The court rejected that allegation as baseless, finding that the mortgage loan schedules in question, submitted by defendants in support of their motion to dismiss the Third Amended Complaint, do in fact identify the relevant loans. *See id.* at *3 n. 2.

## II. DISCUSSION

**\*5** On appeal, plaintiffs contend that the district court erred in dismissing the Complaint, arguing, *inter alia,* that they have a "concrete interest in putting to the test Defendants' claims to own [plaintiffs'] mortgages and mortgage documents." (Plaintiffs' brief on appeal at 13.) Although it is not clear whether the status of plaintiffs' mortgages was in the record before the district court in 2013 when it dismissed the complaint, it is now undisputed that "[i]n 2009 or 2010, each Plaintiff was declared to be in default on his [*sic*] mortgage, and foreclosure proceedings were instituted" (*id.* at 5); that "[i]n connection with the institution of said foreclosure proceedings, Deutsche [Bank], as trustee of one of the Defendant Trusts, claimed to own each Plaintiff's mortgage" (*id.* (citing the Third Amended Complaint)); and that "Plaintiffs are not seeking to enjoin foreclosure proceedings" (Plaintiffs' brief on appeal at 5 n. 2). Assuming that these concessions have not rendered plaintiffs' claims moot, we affirm the district court's ruling that plaintiffs lack standing to pursue their challenges to defendants' ownership of the loans and entitlement to payments.

[1][2] "[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warm v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The plaintiff bears the burden of establishing such standing. *See, e.g., Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (constitutional standing); *Premium Mortgage Corp. v. Equifax, Inc.,* 583 F.3d 103, 108 (2d Cir.2009) (prudential standing). We review *de novo* a decision as to a plaintiff's standing to sue based on the allegations of the complaint and the undisputed facts evidenced in the record. *See, e.g., Rent Stabilization Ass'n v. Dinkins,* 5 F.3d at 594. "[I]f the court also resolved disputed facts" in ruling on standing, "we will accept the court's findings unless they are 'clearly erroneous.' " *Id.* For

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2014 WL 2922317 (C.A.2 (N.Y.))
(Cite as: 2014 WL 2922317 (C.A.2 (N.Y.)))

the reasons that follow, we conclude that plaintiffs established neither constitutional nor prudential standing to pursue the claims they asserted.

A. *Constitutional Standing*

[3][4] The "irreducible constitutional minimum of standing" under Article III of the Constitution includes the requirement that "the plaintiff must have suffered an injury in fact ... which is (a) concrete and particularized, ... and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. at 560 (internal quotation marks omitted). The record in this case reveals that plaintiffs' Third Amended Complaint alleged only injuries that were hypothetical. The chronology of the events alleged helps to make this clear.

Plaintiffs alleged that their loan and mortgage transactions with First Franklin took place in 2005 or 2006 (*see* Third Amended Complaint ¶¶ 2–8); that "Defendants claim[ed] and assert[ed] that payments [we]re due to them monthly" (*id.* ¶ 119); and that, for the loans taken out by plaintiffs and the members of the class they seek to represent, "Defendant Trusts have received or collected payments since January 1, 2004" (*id.* ¶ 81). Plaintiffs asserted that they "[we]re suffering damages with each and every payment to Defendants," on the theory that defendants "[we]re not proper parties to receive and collect such payments." (*Id.* ¶ 122.) But plaintiffs acknowledge that they took out the loans in 2005 or 2006 and were obligated to repay them, with interest; and they have not pleaded or otherwise suggested that they ever paid defendants more than the amounts due, or that they ever received a bill or demand from any entity other than defendants. Thus, there is no allegation that plaintiffs have paid more than they owed or have been asked to do so.

*6 Further, plaintiffs' challenge to defendants' claim of ownership of plaintiffs' loans, implying that the loans are owned by some other entity or entities, is highly implausible, for that would mean that since 2005 there was no billing or other collection effort by owners of loans whose principal alone totaled $3,776,000. The suggestion that plaintiffs were in imminent danger—or, indeed, any danger—of having to make duplicate loan payments is thus entirely hypothetical.

For the same reason, the Complaint's assertion that "Defendants have commenced or authorized the commencement of foreclosure proceedings where payments have not been made or received" (Third Amended Complaint ¶ 123) does not indicate an actual or imminent, rather than a conjectural or hypothetical, injury. Plaintiffs have acknowledged on this appeal that they were declared in default on their mortgages, and that foreclosure proceedings were instituted by Deutsche Bank, claiming to own those mortgages, in 2009 or 2010. Just as there was no allegation in the Complaint that any entity other than defendants had demanded payments, there was no allegation of any threat or institution of foreclosure proceedings against any plaintiff by any entity other than defendants. And had there been any entity that asserted a claim conflicting with the right of Deutsche Bank to foreclose on plaintiffs' mortgages, surely the interposition of such a claim would have been alleged in the Third Amended Complaint, which was not filed until 2011.

On appeal, plaintiffs purport to assert injury by arguing that the alleged defects in the assignments of their mortgages would prevent Deutsche Bank from being able to reconvey clear title to plaintiffs when they pay off their mortgage loans. (*See* Plaintiffs' brief on appeal at 13, 17.) We note that such an injury was not alleged in the Complaint, and it is difficult to view it as other than conjectural or hypothetical, given that plaintiffs, several years ago, defaulted on their loans. *See, e.g., Rajamin v. Deutsche Bank National Trust Co.,* No. B237560, 2012 WL 5448401, at *1–*3 & n. 3 (Cal.Ct.App.2d Dist. Nov. 8, 2012) ("*Rajamin's California case*") (affirming dismissal, for lack of standing, of Rajamin's claim for declaratory relief as to Deutsche Bank's ownership of his promissory note,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2014 WL 2922317 (C.A.2 (N.Y.))
(Cite as: 2014 WL 2922317 (C.A.2 (N.Y.)))

and noting that Rajamin's home had been sold in foreclosure).

We conclude that plaintiffs failed to allege injuries sufficient to show constitutional standing to pursue their claims.

B. *Prudential Standing*

[5] Even if plaintiffs had Article III standing, we conclude that they lack prudential standing. The "prudential standing rule ... normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Warth v. Seldin*, 422 U.S. at 509. "[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* at 499. Plaintiffs have advanced several theories for prudential standing. Each fails.

1. *The Breach–of–Contract Theory*

*7 [6] The principles that any contractual provision "may be waived by implication or express intention of the party for whose benefit the provision inures," *Wolff & Munier, Inc. v. Whiting–Turner Contracting Co.*, 946 F.2d 1003, 1009 (2d Cir.1991) (internal quotation marks omitted), and that strangers may not assert the rights of those who "do not wish to assert them," *Singleton v. Wulff*, 428 U.S. 106, 113–14, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) (plurality opinion), underlie the rule adhered to in New York—whose law governs the assignment agreements (*see* Third Amended Complaint ¶ 29)—that the terms of a contract may be enforced only by contracting parties or intended third-party beneficiaries of the contract, *see, e.g., Mendel v. Henry Phipps Plaza West Inc.*, 6 N.Y.3d 783, 786, 811 N.Y.S.2d 294, 297, 844 N.E.2d 748 (2006) (mere incidental beneficiaries of a contract are not allowed to maintain a suit for breach of the contract); *see also Restatement (Second) of Contracts* § 315 (1981) ("An incidental beneficiary acquires by virtue of the promise no right against the promisor or the promisee.").

This rule has been applied to preclude claims where mortgagors have sought relief from their loan obligations on grounds such as those asserted here. *See, e.g., Cimerring v. Merrill Lynch Mortgage Investors, Inc.*, No. 8727/2011, 2012 WL 2332358, at *9 (N.Y. Sup.Ct. Kings Co. June 13, 2012) ("plaintiffs lack standing to allege a claim for breach of the PSA because they are not parties to this contract, nor do they allege that they are third-party beneficiaries to the agreement"); *see generally Reinagel v. Deutsche Bank National Trust Co.*, 735 F.3d 220, 228 n. 29 (5th Cir.2013) ("courts invariably deny mortgagors third-party status to enforce PSAs"). Indeed, in an action brought by a successor trustee of another First Franklin mortgage loan trust, the Appellate Division of the New York Supreme Court ("Appellate Division") ruled that mortgagors lack standing to assert such breaches, citing as authority the opinion of the district court in this very case: While holding that the plaintiff bank was not entitled to summary judgment in its action to foreclose the defendants' mortgage, the Appellate Division affirmed the lower court's denial of the defendant mortgagors' motion to dismiss the foreclosure complaint, ruling that the defendants

> did not have standing to assert noncompliance with the subject lender's pooling service agreement (*see Rajamin v. Deutsche Bank Natl. Trust Co.*, ... 2013 WL 1285160, 2013 U.S. Dist LEXIS 45031 [SD N.Y.2013]).

*Bank of New York Mellon v. Gales*, 116 A.D.3d 723, 725, 982 N.Y.S.2d 911, 912 (2d Dep't 2014).

Here, plaintiffs contend that their loans were not acquired by the Defendant Trusts pursuant to the assignment agreements—of which the PSAs were part—because, plaintiffs allege, parties to those agreements did not perform all of their obligations under the PSAs. Although noncompliance with PSA provisions might have made the assignments unen-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2014 WL 2922317 (C.A.2 (N.Y.))
(Cite as: 2014 WL 2922317 (C.A.2 (N.Y.)))

forceable at the instance of parties to those agreements, the district court correctly noted that plaintiffs were not parties to the assignment agreements. And plaintiffs have not shown that the entities that were parties to those agreements intended that plaintiffs—whose financial obligations were being bought and sold—would in any way be beneficiaries of the assignments. We conclude that the district court properly ruled that plaintiffs lacked standing to enforce the agreements to which they were not parties and of which they were not intended beneficiaries.

*8 Plaintiffs also argue that the district court's third-party-beneficiary analysis was flawed because "Plaintiffs are *first* parties to their mortgage notes and deeds of trust" (Plaintiffs' brief on appeal at 17 (emphasis added)). This argument is far wide of the mark. Plaintiffs are not suing for breach or nonperformance of their loan and mortgage agreements; those agreements provide, *inter alia*, that plaintiffs' loans "can be sold one or more times without prior notice to [the b]orrower" (Third Amended Complaint Exhibit E ¶ 20; *id.* Exhibit G ¶ 20). The notes and deeds of trust to which plaintiffs were parties did not confer upon plaintiffs a right against nonparties to those agreements to enforce obligations under separate agreements to which plaintiffs were not parties.

2. *The Breach–of–Trust Theory*

In an effort to circumvent their lack of standing to make their contract arguments, plaintiffs argue that assignments failing to comply with the PSAs violated laws governing trusts. They rely on a New York statute that provides: "If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by ... law, is void." N.Y. Estates, Powers and Trusts Law ("EPTL") § 7–2.4 (McKinney 2002). Here, the PSAs are the instruments creating the trust estates, and plaintiffs argue that the PSAs were "contraven[ed]" by the Trustee's acceptance of mortgage loans conveyed in a manner that did not comply with the procedural formalities that the PSAs specified, thereby rendering those conveyances void under the statute. (*E.g.*, Plaintiffs' brief on appeal at 12.) Plaintiffs' reliance on trust law is misplaced.

First, as the district court concluded, this argument depends on plaintiffs' contention that parties to the assignment agreements violated the terms of the PSAs. If those agreements were not breached, there is no foundation for plaintiffs' contention that any act by the trusts' trustee was unauthorized. But as discussed above, plaintiffs, as nonparties to those contracts, lack standing to assert any nonperformance of those contracts.

[7] Second, under New York law, only the intended beneficiary of a private trust may enforce the terms of the trust. *See, e.g., Matter of the Estate of McManus,* 47 N.Y.2d 717, 719, 417 N.Y.S.2d 55, 56, 390 N.E.2d 773 (1979) ( "*McManus* ") (persons who "were not beneficially interested in the trust ... lack[ed] standing to challenge the actions of its trustee"); *Cashman v. Petrie,* 14 N.Y.2d 426, 430, 252 N.Y.S.2d 447, 450, 201 N.E.2d 24 (1964) (mere incidental beneficiaries of a trust "cannot maintain a suit to enforce the trust"); *Naversen v. Gaillard,* 38 A.D.3d 509, 509, 831 N.Y.S.2d 258, 259 (2d Dep't 2007); *see also Restatement (Third) of Trusts* § 94(1) (2012) ("A suit against a trustee of a private trust to enjoin or redress a breach of trust or otherwise to enforce the trust may be maintained only by a beneficiary or by a co-trustee, successor trustee, or other person acting on behalf of one or more beneficiaries."); *cf. Rajamin's California case,* 2012 WL 5448401, at *2 ("A homeowner who gives a deed of trust to secure his repayment of a home loan does not have standing to challenge the foreclosing party's authority to act on behalf of the deed of trust's beneficiary."). Where the challengers to a trustee's actions are not beneficiaries, and hence lack standing, the court "need not decide whether the conduct of the trustee comported with the terms of the trust." *McManus,* 47 N.Y.2d at 719, 417 N.Y.S.2d at 56, 390 N.E.2d 773.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2014 WL 2922317 (C.A.2 (N.Y.))
**(Cite as: 2014 WL 2922317 (C.A.2 (N.Y.)))**

*9 [8][9] Third, even if plaintiffs had standing to make an argument based on EPTL § 7–2.4, on the theory that a mortgagor has standing to "challenge[ ] a mortgage assignment as invalid, ineffective, or void," *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 354 (1st Cir.2013) (internal quotation marks omitted), the weight of New York authority is contrary to plaintiffs' contention that any failure to comply with the terms of the PSAs rendered defendants' acquisition of plaintiffs' loans and mortgages void as a matter of trust law. Under New York law, unauthorized acts by trustees are generally subject to ratification by the trust beneficiaries. *See King v. Talbot* 40 N.Y. 76, 90 (1869) ("[t]he rule is perfectly well settled, that a *cestui que trust* is at liberty to elect to approve an unauthorized investment, and enjoy its profits, or to reject it at his option"); *Mooney v. Madden*, 193 A.D.2d 933, 933–34, 597 N.Y.S.2d 775, 776 (3d Dep't) ("*Mooney*") ("A trustee may bind the trust to an otherwise invalid act or agreement which is outside the scope of the trustee's power when the beneficiary or beneficiaries consent or ratify the trustee's ultra vires act or agreement ...."), *lv. dismissed,* 82 N.Y.2d 889, 610 N.Y.S.2d 153, 632 N.E.2d 463 (1993); *Washburn v. Rainier*, 149 A.D. 800, 803–04, 134 N.Y.S. 301, 304 (2d Dep't 1912); *Hine v. Hine*, 118 A.D. 585, 592, 103 N.Y.S. 535, 540 (4th Dep't 1907); *English v. McIntyre*, 29 A.D. 439, 448–49, 51 N.Y.S. 697, 704 (1st Dep't 1898) ("where the trustee has engaged with the trust fund in an unauthorized business ... the rule is that the *cestui que trust* may ratify the transactions of the trustee and take the profits, if there are profits"). Moreover, "beneficiary consent may be express or implied from the acceptance of the trustee's act or agreement and may be given either after or before the trustee's act...." *Mooney,* 193 A.D.2d at 934, 597 N.Y.S.2d at 776. To be an effective ratification, however, "all of the beneficiaries" must "expressly or impliedly" agree. *Id.* at 933, 597 N.Y.S.2d 775, 597 N.Y.S.2d at 776; *see also id.* at 934, 597 N.Y.S.2d at 776 (remanding for determination of whether "remainder persons who also [we]re beneficiaries" had "consented ... and/or ratified").

The principle that a trustee's unauthorized acts may be ratified by the beneficiaries is harmonious with the overall principle that only trust beneficiaries have standing to claim a breach of trust. If a stranger to the trust also had such standing, the stranger would have the power to interfere with the beneficiaries' right of ratification.

Because, as the above authorities demonstrate, a trust's beneficiaries may ratify the trustee's otherwise unauthorized act, and because "a void act is not subject to ratification," *Aronoff v. Albanese,* 85 A.D.2d 3, 4, 446 N.Y.S.2d 368, 370 (2d Dep't 1982), such an unauthorized act by the trustee is not void but merely voidable by the beneficiary.

*10 For the contrary position, plaintiffs rely principally on *Genet v. Hunt,* 113 N.Y. 158, 21 N.E. 91 (1889) ("*Genet* "), and *Wells Fargo Bank, N.A. v. Erobobo,* No. 31648/2009, 2013 WL 1831799 (Sup.Ct. Kings Co. Apr. 29, 2013) ("*Erobobo* "). Neither case compels the conclusion that a trustee's acceptance of property on behalf of a trust without complying with the terms of the trust agreement is void.

In *Genet,* the New York Court of Appeals described the principal question before it as whether certain testamentary trusts created under an 1867 will (the "bequests") constituted the exercise of a power of appointment conferred by an 1853 trust deed, causing the bequests' suspension of rights of alienation to date back to 1853 and to violate the rule against perpetuities—*i.e.,* whether the bequests were "void for remoteness." 113 N.Y. at 165, 21 N.E. at 92. The testatrix in *Genet* was the settlor and a beneficiary of the 1853 trust; the trust's other beneficiaries, contingent remaindermen, were the testatrix's heirs. *See id.* at 169, 21 N.E. at 93. The Court, en route to a conclusion that the bequests must be treated as dating back to the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2014 WL 2922317 (C.A.2 (N.Y.))
(Cite as: 2014 WL 2922317 (C.A.2 (N.Y.)))

1853 trust and as violating the rule against perpetuities, observed that a New York statutory provision (which was a predecessor to EPTL § 7–2.4) provided that acts of a trustee in contravention of the trust's terms were void; the Court thus stated that the settlor and income beneficiary of the trust could not "*alone, or in conjunction with the trustees, ... abrogate the trust,*" 113 N.Y. at 168, 21 N.E. at 93 (emphasis added). The *Genet* Court did not advert to the possibility of ratification; to be an effective ratification, there must be agreement by "all of the beneficiaries," including "remainder persons who also are beneficiaries," *Mooney,* 193 A.D.2d at 934, 597 N.Y.S.2d at 776. Although the general permissibility of ratification had been described 20 years before *Genet* as "perfectly well settled," *King v. Talbot,* 40 N.Y. at 90, there was no possibility in *Genet* that all of the 1853 trust's beneficiaries could have consented to any attempted abrogation or contravention of trust terms by the testatrix during her lifetime because the remainder beneficiaries, the testatrix's heirs, could not be ascertained until her death. We conclude that *Genet* has no bearing on the claims of plaintiffs in the present case.

Although *Erobobo* concerned events more similar to those in this case, as it involved a mortgage, a securitization trust, and allegations of unauthorized acts by a trustee, we find it unpersuasive. In *Erobobo,* a trial court, in denying the plaintiff bank's motion for summary judgment in its foreclosure action, stated that "[u]nder New York Trust Law, every sale, conveyance or other act of the trustee in contravention of the trust is void. EPTL § 7–2.4." 2013 WL 1831799, at *8. But the court so stated without any citation or discussion of the New York authorities holding (a) that only the beneficiary of a trust, or one acting on the beneficiary's behalf, has standing to enforce the terms of the trust, and (b) that the beneficiaries may ratify otherwise unauthorized acts of the trustee.

*11 While a few other courts have reached conclusions about EPTL § 7–2.4 similar to that of the *Erobobo* court, *see, e.g., Auroa Loan Services LLC v. Scheller,* No.2009–22839, 2014 WL 2134576, at *2–*4 (N.Y. Sup.Ct. Suffolk Co. May 22, 2014); *Glaski v. Bank of America, National Association,* 218 Cal.App.4th 1079, 1094–98, 160 Cal.Rptr.3d 449, 461–64 (5th Dist.2013), we are not aware of any New York appellate decision that has endorsed this interpretation of § 7–2.4. And most courts in other jurisdictions discussing that section have interpreted New York law to mean that "a transfer into a trust that violates the terms of a PSA is voidable rather than void," *Dernier v. Mortgage Network, Inc.,* 2013 VT 96, ¶ 34, 87 A.3d 465, 474 (2013); *see, e.g., Bank of America National Ass'n v. Bassman FBT, L.L.C.,* 2012 IL App (2d) 110729, ¶¶ 18–21, 366 Ill.Dec. 936, 981 N.E.2d 1, 8–10 (2d Dist.2012); *see also Butler v. Deutsche Bank Trust Co. Americas,* 748 F.3d 28, 37 n. 8 (1st Cir.2014) ("not[ing] without decision ... that the vast majority of courts to consider the issue have rejected *Erobobo's* reasoning, determining that despite the express terms of [EPTL] § 7–2.4, the acts of a trustee in contravention of a trust may be ratified, and are thus voidable").

In sum, we conclude that as unauthorized acts of a trustee may be ratified by the trust's beneficiaries, such acts are not void but voidable; and that under New York law such acts are voidable only at the instance of a trust beneficiary or a person acting in his behalf. Plaintiffs here are not beneficiaries of the securitization trusts; the beneficiaries are the certificateholders. Plaintiffs are not even incidental beneficiaries of the securitization trusts, for their interests are adverse to those of the certificateholders. Plaintiffs do not contend that they did not receive the proceeds of their loan transactions; and their role thereafter was simply to make payments of the principal and interest due. The law of trusts provides no basis for plaintiffs' claims.

3. *The Nothing–Was–Transferred and Related Theories*

In another effort to have the assignments of their mortgages to Defendant Trusts categorized as absolutely void, plaintiffs argue that an attempt to assign a

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2014 WL 2922317 (C.A.2 (N.Y.))
(Cite as: 2014 WL 2922317 (C.A.2 (N.Y.)))

property right that is not owned is without effect, and they assert that the entity from which defendants claim to have received plaintiffs' loans and mortgages—the depositor—did not own them. Even assuming that "standing exists for challenges that contend that the assigning party never possessed legal title," *Woods v. Wells Fargo Bank, N.A.,* 733 F.3d at 354, this argument suffers fatal flaws.

First, the Complaint did not directly allege that the depositor did not own plaintiffs' loans and mortgages. Instead, noting defendants' reliance on documents pertaining to each mortgage loan, the Complaint alleged that the mortgage loan schedules "do[ ] not specifically list" plaintiffs' notes or mortgages (*e.g.,* Third Amended Complaint ¶ 36), and indeed "do[ ] not specifically list *any* promissory note, mortgage or deed of trust or name of *any* person or individuals" (*e.g., id.* ¶ 37 (emphasis added)). Thus, plaintiffs' voidness contention rests on the supposition that the mortgage assignment agreements did not purport to assign any mortgages—or, indeed, any related interests—a supposition that is entirely implausible.

*12 Second, the district court noted plaintiffs' argument and concluded that it was baseless, finding that the mortgage loan schedules submitted by defendants in support of their motion to dismiss did in fact identify the relevant loans. *See* 2013 WL 1285160, at *3 n. 2. Although plaintiffs, in their reply brief on appeal, reiterate the implausible proposition that "no schedule specifying the loans [wa]s attached" to the assignment agreements (Plaintiffs' reply brief on appeal at 7), their briefs do not dispute or even mention the district court's factual finding. We therefore regard any challenge to this finding as waived.

Lastly, we reject plaintiffs contention that the assignments of some of plaintiffs' mortgages were void because the assignments were recorded after the closing dates of the Defendant Trusts or because the named assignor was First Franklin rather than the depositors named in the PSAs. To the extent that plaintiffs argue that these assignments violated the PSAs, the argument, for reasons already discussed, is not one that plaintiffs have standing to make. To the extent that plaintiffs rely on the dates of the recorded mortgage assignments to imply that the assignments of their loans and mortgages to defendants were a sham, we reject the implication as implausible. A post-closing recordation does not in itself suggest that the assignments were made at the time of the recordation, and the record does not give rise to such a suggestion. The PSAs themselves were sufficient to assign plaintiffs' obligations to Deutsche Bank as of the assignments' effective dates. (*See, e.g.,* First Franklin Mortgage Loan Trust 2006–FF11 Pooling and Servicing Agreement, dated August 1, 2006 ("FFMLT 2006–FF11 PSA"), at § 2.01(a) ("The Depositor, *concurrently with the execution and delivery hereof, hereby sells,* transfers, *assigns,* sets over *and otherwise conveys* to the Trustee for the benefit of the Certificateholders ... all the right, title and interest of the Depositor in" the principal and interest on the mortgage loans (emphases added)).

[10][11] The subsequent recording of mortgage assignments does not imply that the promissory notes and security interests had not been effectively assigned under the PSAs. Under the law of either California or New York, when a note secured by a mortgage is assigned, the "mortgage passes with the debt as an inseparable incident." *U.S. Bank, N.A. v. Collymore,* 68 A.D.3d 752, 754, 890 N.Y.S.2d 578, 580 (2d Dep't 2009); *accord Domarad v. Fisher & Burke, Inc.,* 270 Cal.App.2d 543, 553, 76 Cal.Rptr. 529, 535 (1st Dist.1969) ("a deed of trust is a mere incident of the debt it secures and ... an assignment of the debt carries with it the security" (internal quotation marks omitted)). The assignment of a mortgage need not be recorded for the assignment to be valid. *See, e.g., MERSCORP, Inc. v. Romaine,* 8 N.Y.3d 90, 98–99, 828 N.Y.S.2d 266, 269–70, 861 N.E.2d 81 (2006); *Wilson v. Pacific Coast Title Insurance Co.,* 106 Cal.App.2d 599, 602, 235 P.2d 431, 433 (4th

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2014 WL 2922317 (C.A.2 (N.Y.))
**(Cite as: 2014 WL 2922317 (C.A.2 (N.Y.)))**

Dist.1951). Thus, the recorded assignments do not support plaintiffs' contention that their loans and mortgages were not owned by defendants.

***13** Moreover, plaintiffs have not alleged that the promissory notes were not conveyed to the Trustee in a timely manner. Section 2.01(b) of the PSAs states that documentation, including each "original Mortgage Note" and each "original recorded Mortgage" "has [been] delivered ... to the Custodian." The fact that plaintiffs mount no viable challenge to the timeliness of the assignment of the promissory notes scuttles their contention that the mortgages were not timely assigned.

. Finally, although plaintiffs' contend that defendants do not "ha[ve] *custody* " of the notes (Plaintiffs' reply brief on appeal at 8 (emphasis added)), that contention does not refute defendants' claim of ownership. While the Complaint partially quotes from § 2.01(b)(1) of the FFMLT 2006–FF11 PSA, alleging that it "states in relevant part: '(b) ... Depositor has delivered or caused to be delivered to Custodian ... (i) the original Mortgage Note' " (Third Amended Complaint ¶ 38), the second ellipsis in that allegation omits the quite relevant words "for the benefit of the Certificateholders." Moreover, § 8.02(e) of the FFMLT 2006–FF11 PSA provides that "the Trustee may execute any of the trusts or powers hereunder ... by or through ... custodians." The apparent "custody" of plaintiffs' notes by custodians, which the assignment agreements explicitly allow the Trustee to use, does not imply that those agreements failed to convey ownership of plaintiffs' obligations to defendants.

CONCLUSION

We have considered all of plaintiffs' arguments on this appeal and have found them to be without merit. The judgment of the district court is affirmed.

> FN* The Clerk of Court is directed to amend the official caption to conform with the above.

C.A.2 (N.Y.),2014.
Rajamin v. Deutsche Bank Nat. Trust Co.
--- F.3d ----, 2014 WL 2922317 (C.A.2 (N.Y.))

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

# PROOF OF SERVICE
## CCP 1013A(3) REVISED 5/1/88

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is: 3161 Michelson Drive, Suite 1500, Irvine, CA 92612-4414.

On **July 14, 2014**, I served the foregoing document(s) described as: **NOTICE OF SUPPLEMENTAL AUTHORITY** on all interested parties in this action by placing ☒ a true copy ☐ the original thereof enclosed in sealed envelopes addressed as follows:

<u>U.S. Mail</u>

Joseph La Costa, Esq.                                    *Plaintiff and Appellant*
7840 Mission Center Ct., Ste. 104
San Diego, CA 92103

☐ BY CM/ECF NOTICE OF ELECTRONIC FILING: I caused said document(s) to be served by means of this Court's electronic transmission of the Notice of Electronic filing through the Court's transmission facilities, to the parties and/or counsel who are registered CM/ECF Users set forth in the service list obtained from this Court.

☒ BY MAIL - As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ STATE - I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒ FEDERAL - I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on **July 14, 2014**, at Irvine, California.

_____
Theresa Macaulay

654428.1.1

PROOF OF SERVICE